HENRIETTA S. FINER & another *vs.* MOSES H. STEUER.

Suffolk.    December 7, 1925. — May 26, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Will,* Validity: execution. . *Marriage and Divorce,* Foreign marriage. *Evidence,* Presumptions and burden of proof, Foreign law, Proof of validity of marriage. *Probate Court,* Findings by judge, Appeal, Parties.

While it is the established rule in this Commonwealth that, if a will is contested, the three subscribing witnesses should be produced if living and within the jurisdiction of the court, it was proper for a judge of probate hearing a contested petition for proof of a will to find that the will was properly executed by a competent person and to admit it to probate, although but one of the subscribing witnesses testifies before him, if a second witness, not a resident of the Commonwealth, testifies by deposition, and evidence is introduced to show that the third witness had left his residence in this Commonwealth, had not been heard of by his family for more than two years, and could not be found.

At the hearing above described, it was proper to exclude an affidavit, not a deposition, alleged to have been signed and sworn to by the third attesting witness stating in effect that the will was not signed in his presence and that the other attesting witnesses did not sign in his presence.

Where an alleged testator in his will nominates his wife as executrix and makes provision for her and "all children that may survive me" and

his wife dies before him, two persons born to him and his wife have a right under G. L. c. 193, § 7, to offer the will for probate.

Where a brother of an alleged testator, contending that the testator never married, that his children were illegitimate, and that he was his brother's heir at law, seeks to oppose the proof of a will which disposes of the decedent's property for the benefit of "all children that may survive me," and appeals from a decree of the Probate Court allowing the will, the burden is upon him to prove by a fair preponderance of evidence that he has a right to contest the will as an heir and to appeal from the decree of the Probate Court.

At the hearing of a petition by the alleged children of the testator above described to strike the appearance of the brother from the record as one having no interest in the estate of the decedent, and of a petition of the brother to strike the names of the daughters from the record, it appeared that the alleged marriage of the testator was solemnized in Austria in accordance with the rites of the Jewish religion, that the testator and the mother of the petitioners had lived together in Austria and in this Commonwealth as man and wife, and that six children had been born of the union. There was in evidence documentary evidence as to the law of Austria. The judge found that he was "not satisfied on the evidence" before him "as to just what was the law of Austria at the time of said marriage ceremony . . . that there was a failure to prove before me any facts showing that the contracting parties to said marriage had failed to comply with the requirements of those laws," and found that the marriage was valid and that the brother was not entitled as a person interested in the estate to contest the proof of the will. On appeal by the brother, with the evidence reported, it was *held*, that, as an examination of the evidence did not show that the findings by the judge were clearly wrong, the appeal must be dismissed and a decree allowing the will affirmed.

A ceremony of marriage performed in a foreign jurisdiction and followed by cohabitation, is presumed to have been performed according to law, and one attacking it has the burden of proving its invalidity.

PETITION, filed in the Probate Court for the county of Suffolk on August 18, 1921, by Henrietta S. Finer and Elisabeth Steuer for proof of the will of Bernard Steuer and the appointment of the petitioners as administratrices with the will annexed.

The petitioners alleged that they and Celia S. Wasserman and Marion Steuer were daughters of the alleged testator and were his sole next of kin. The will in substance gave all the testator's personal property to his wife and all his real estate to her in trust for the benefit of herself and of "all children that may survive me." The wife died before the testator. Moses H. Steuer, a brother of the decedent, on August 18, 1921, filed an appearance to oppose the peti-

tion "as an heir" and also as a creditor; on September 24, 1921, he presented for filing a petition for the framing of an issue to a jury as to the validity of the will; and on November 17, 1924, a petition that the names of the four alleged daughters of the decedent "be stricken from the records in this case as heirs at law, next of kin, or entitled in any way to any interest in the estate of said Bernard Steuer, and that they be declared not entitled to be heard as interested parties on the issue of the allowance of the alleged will of said Bernard Steuer."

The petitioner Finer on January 28, 1924, filed a petition "that the appearance of said Moses H. Steuer as a party in interest, as aforesaid, be stricken from the record."

The petition for proof of the will first was assigned and came on for hearing before *Prest,* J., on January 30, 1924, a stenographer having been appointed in accordance with G. L. c. 215, § 18; and the judge ruled that until Moses H. Steuer showed that he was a party in interest he would not be heard and that he had no standing in court as a creditor to oppose the proof of the will. Formal proof of the will was permitted through testimony of one Heman Fitgang, who testified that the will was signed in his presence by the alleged testator and that he signed in the presence of the alleged testator, but that he could not remember whether the other attesting witnesses signed their names. A deposition of one Louis Aaron, then of Seattle in the State of Washington, was presented. He testified that he drew the will and in detail described its execution in accordance with the required formalities. A return by a constable upon a summons issued for the attendance of the third attesting witness, one Louis Weinfeld, was introduced in evidence by the petitioners, the return stating that he "made diligent search for the within named Louis Weinfelt but could not find him as he is out of the Commonwealth. I therefore return said summons without service thereof." The contestant offered and the judge excluded an affidavit, not a deposition, purporting to have been made by Weinfeld and in effect stating that the alleged testator was not in his presence when he, the testator, signed the alleged will

and that he did not sign in the presence of the testator or of the other alleged attesting witnesses. There was other evidence as to Weinfeld which is described in the judge's findings, *infra*. The first hearing then was adjourned.

The petitions were further heard together in full on November 17, 1924, by *Prest*, J., a stenographer having again been appointed under G. L. c. 215, § 18, to take the evidence.

Findings by the judge as to the execution of the will were as follows: "The petitioners presented before me in person one Hyman Fortgang, one of the witnesses of said last will, who gave evidence as to the execution of said will. The petitioners also presented the deposition of one Louis Aaron, who was a witness to the will and who in 1908 was a duly admitted attorney at law practising in Boston, and who is now an attorney at law practising in Seattle, in the State of Washington. The petitioners endeavored to summon as a witness Louis Weinfeld, the third witness to the will. They presented evidence showing that they were unable to obtain service upon him. They did produce the wife and a brother of said Louis Weinfeld, and there was evidence that in July, 1922, said Louis Weinfeld left his residence, then in said Boston, and had not been heard of by his family since that time."

Other material evidence and findings by the judge are described in the opinion. By order of the judge, decrees were entered that the four alleged daughters of the decedent were his legitimate children and that Moses H. Steuer was his brother and not an heir at law or a party in interest; allowing the petition to strike the appearance of Moses H. Steuer from the record; denying the petition of Moses H. Steuer that the names of the four alleged daughters be struck from the record; granting the petition for the allowance of the will and issuance of letters testamentary with the will annexed to the petitioning daughters. Moses H. Steuer appealed from all decrees.

*O. Storer*, for the respondent.

*A. K. Cohen*, (*M. L. Lourie & M. E. Bernkopf* with him,) for the petitioners.

SANDERSON, J.   Bernard Steuer died in Boston, August 5, 1921, leaving a will in which Jennie D. Steuer, therein referred to as his wife, was nominated as executrix.   She died about three weeks prior to the date of his death and the will was offered for probate by two of the petitioners who allege that they are daughters of the testator and that they and two other daughters are his heirs at law and next of kin. Moses H. Steuer, a brother of Bernard, entered his appearance as a creditor and heir, and moved that issues be framed to determine the validity of the will.   The questions here involved relate to the decrees admitting the will to probate, granting the motion of one of the petitioners asking that the appearance of Moses H. Steuer be stricken from the record, and denying the petition of Moses H. Steuer to strike from the record the names of the petitioners for the probate of the will, and their two sisters, on the ground that they are not the legitimate children of Bernard Steuer and are not entitled to any interest in his estate.   The petition for the probate of the will was heard by the judge at the same time with the motions hereinbefore mentioned.   Moses H. Steuer was given opportunity to be heard upon all of these matters. The only ground upon which the probate of the will was opposed was that it was not properly executed.   During the hearing on this matter Moses H. Steuer said: "I have no objection to the allowance of the will provided it should not act as *res judicata* in the trial of that question in the Land Court."

Two of the witnesses to the will testified, one orally and one by deposition.   Upon the testimony of one of these witnesses, that the legal formalities required in the execution of a will were complied with, the probate judge could find that the will was duly executed and admit it to probate unless prevented from so doing by the absence of the third witness. *Tilden* v. *Tilden*, 13 Gray, 110.   *Hammill* v. *Weeks*, 225 Mass. 245.   The petitioners offered evidence tending to prove that they were unable to make service on this witness, and that he left Boston in July, 1922, and had not been heard of by his family since that time.   His signature to the will was identified.

The rule is well established that if a will is contested the three subscribing witnesses should be produced, if living and subject to the process of the court. *Chase* v. *Lincoln*, 3 Mass. 236. *Howes* v. *Colburn*, 165 Mass. 385. *O'Connell* v. *Dow*, 182 Mass. 541. *Nunn* v. *Ehlert*, 218 Mass. 471. The judge found that the petitioners endeavored to summon this witness and that their evidence showed they were unable to get service on him. The practice adopted in this case is not in violation of that recognized by the decisions. The affidavit of this absent witness offered by the defendant was not admissible and the ruling excluding it was right.

"The decree of the court admitting the will to probate is in the nature of a judgment *in rem*, which establishes the will against all the world. Any person interested may make himself a party to the proceedings by applying to the proper tribunal." *Bonnemort* v. *Gill*, 167 Mass. 338, 340.

The will made provision for the testator's children, and the petitioners as possible beneficiaries under it had a right to offer it for probate. G. L. c. 193, § 7.

The issue of legitimacy of the children was first specifically raised by the motion of Moses H. Steuer, although the same question was incidentally involved in his appearance to oppose the will as an heir at law, and in the motion of one of the petitioners that the appearance of Moses H. Steuer be stricken from the record. At the hearing, the appellant admitted that the testator and Jennie D. Weinfeld were married in Austria in 1878 or 1879, at a wedding ceremony performed in accordance with the requirements of the Jewish religion, and were the parents of the petitioners and their two sisters, but he contended that the marriage was illegal. The question, whether Moses H. Steuer was entitled to contest the probate of the will as an heir, is preliminary to the question whether the instrument offered for probate is to be allowed, even if the issues are tried together. *Wellington* v. *DeCordova*, 251 Mass. 229.

The motion of one of the proponents of the will to have the name of Moses H. Steuer stricken from the record raised no new issue and did not change the burden of proof. The party seeking the right to oppose the will must establish that

right.  If he fails, the motion to strike his name from the record will be allowed.  The practical effect of a failure on his part to prove that he was a party in interest would be the same even if no such motion had been filed.  *Henry* v. *Estey,* 13 Gray, 336.

This court has no jurisdiction to consider an appeal from a decree of the Probate Court unless it is taken by a person aggrieved by the decree.  G. L. c. 215, § 9.  *Pattee* v. *Stetson,* 170 Mass. 93, 94.  In the present case the sole ground for entertaining the appeal of Moses H. Steuer from the decree allowing the will is his contention that he is heir at law and next of kin of his brother.  The burden is upon him to prove by a fair preponderance of evidence that he had a right to contest the will as an heir and to appeal from the decree of the Probate Court.  *Pattee* v. *Stetson, supra.*  If neither his pecuniary interest nor personal rights are affected by the decree, he is not a person aggrieved.  *Pierce* v. *Gould,* 143 Mass. 234.  *Smith* v. *Bradstreet,* 16 Pick. 264.  *Lawless* v. *Reagan,* 128 Mass. 592.  *Leyland* v. *Leyland,* 186 Mass. 420.  It is within the power of the court to require the appellant to prove his standing at once as the first step in his case.  *Goff* v. *Britton,* 182 Mass. 293, 295.  If Moses H. Steuer is not an heir at law of the testator, his appeal from the allowance of the will should be dismissed for want of jurisdiction.  *Pattee* v. *Stetson, supra.*  *Goff* v. *Britton, supra,* page 294.

The ruling that the burden was upon the children to prove that they were legitimate was too favorable to the appellant.

The trial judge found in part as follows: "The real issue involved in the petition to strike from the record the appearance of Moses H. Steuer as a party in interest, and in the petition of Moses H. Steuer to strike from the record the names of said four daughters, is the legitimacy of said four daughters, which legitimacy depends upon whether or not the deceased and his wife, Jennie D. Steuer, were ever lawfully married.  The contention of Moses H. Steuer was that a marriage ceremony, at which he testified he was present, performed in Mielec, then a part of Galicia in the country of Austria (now a part of Poland), between said Bernard

Steuer and said Jennie D. Steuer and purporting to join them as husband and wife, was illegal in that the said ceremony was performed without complying with certain laws of Austria, which compliance he claimed was a necessary prerequisite to a valid marriage. There was no claim that the said Henrietta S. Finer, Celia S. Wasserman, Elisabeth Steuer and Marion Steuer were not the children of said Bernard Steuer and Jennie D. Steuer, the said Moses H. Steuer claiming that they were the natural children of said Bernard Steuer and Jennie D. Steuer.

"A commission was duly issued authorizing the taking of depositions of certain persons in Mielec, to which commission interrogatories and objections thereto were duly attached. Moses H. Steuer admitted and I find that he personally carried said commission to Mielec, that he interviewed the witnesses, that he interviewed and employed the magistrate who took the depositions, and that he, the said Moses H. Steuer, accompanied the witnesses on the railroad train from Mielec to the town in which the office of the magistrate was located and talked with the witnesses while on the train, and that he was in the corridor leading to and remained just outside of the office of the magistrate during the time the witnesses gave their depositions. Said Moses H. Steuer admitted and I find that he personally received from said magistrate said commission and depositions, and that he brought them from Poland to this city and deposited them with the register of probate in this county.

"During the hearings it appeared, and I find, that about 1878 in said Mielec, where said Bernard Steuer and Jennie D. Steuer (born Jennie D. Weinfeld), then resided, they were married by a person authorized under the laws and customs of the Jewish religion so to do according to the customs and rites of said religion; that Moses H. Steuer was not present at the marriage ceremony; that for some time prior to said ceremony taking place it was known in the town that the marriage was to take place and, at the time of the marriage, that is to say, on the day of and for the two days following the marriage, there was a celebration of the marriage taking the form of feasting and dancing attended by a considerable

number of persons living in the town; that thereafter the said Bernard Steuer and Jennie D. Steuer for some three or four years lived together as husband and wife in said town, their first home being with and in the residence of an uncle of said Bernard Steuer and said Moses H. Steuer; that during that period two children were born to them in said town, one of whom died in infancy, and the other of whom is said Henrietta S. Finer, one of the petitioners; that in 1882 said Bernard Steuer came to this country and was later joined by his wife and child; that they lived together in Boston or its immediate vicinity and principally in Boston, from that time until the time of their respective deaths, that the said Jennie D. Steuer having predeceased said Bernard Steuer by about three weeks; that here there were four more children born to them, one of whom died, having never married, when he was about nineteen years of age, and the other three being said Celia S. Wasserman, said Elisabeth Steuer and said Marion Steuer. All of said living children lived at home with their parents to the time of their respective marriages, and the said Elisabeth Steuer and said Marion Steuer lived with their parents up to the time of their death.

"For this period of nearly forty years the said Bernard Steuer and the said Jennie D. Steuer lived together as husband and wife and were known as husband and wife in the communities in which they lived, and were so recognized and regarded by those who knew them. I find that they were both very religious persons, having strong faith and belief in the Jewish religion. Some evidence of this is shown in the language contained in said last will. I find that the father of said Bernard Steuer and Moses H. Steuer died when they were very young and that later their mother remarried in said Mielec and that there are now living born of said remarriage three children, half sisters of said Bernard Steuer and Moses H. Steuer.

"The said Moses H. Steuer offered in evidence before me as proof of the fact of what the law of Austria was at the time of the taking place of said marriage ceremony certain volumes said to contain the statute or code law of Austria then in force. I admitted the same in evidence. This was

the only evidence submitted on that question of fact. Upon an examination of said volumes, and of translations made therefrom, which translations the parties, without prejudice to their respective rights, agreed were substantially correct, I am not satisfied on the evidence before me as to just what was the law of Austria at the time of said marriage ceremony. Assuming that said volumes constituted proof of the law of Austria as it was at the time of said marriage, I find that there was a failure to prove before me any facts showing that the contracting parties to said marriage had failed to comply with the requirements of those laws.

"I further find that the said marriage ceremony was valid and legal and that said Bernard Steuer and Jennie D. Steuer were lawful husband and wife and continued to live as such from the time of said marriage to July 19, 1921, when said Jennie D. Steuer died, and that said Bernard Steuer died on August 5, 1921. I find that said Henrietta S. Finer, Celia S. Wasserman, Elisabeth Steuer, and Marion Steuer are the legitimate children of the deceased testator, Bernard Steuer. I further find that said Moses H. Steuer is a brother of said Bernard Steuer but is not his heir-at-law and is not a party in interest."

Marriage may be proved by an admission thereof by an adverse party, by evidence of general repute or of cohabitation of the parties as married persons, or of any other fact from which it may be inferred. G. L. c. 207, § 47. A marriage may be proved by oral evidence without offering a record. *Commonwealth* v. *Dill*, 156 Mass. 226. *Commonwealth* v. *Hayden*, 163 Mass. 453.

Cohabitation and conduct are always admissible to prove marriage. *Commonwealth* v. *Hurley*, 14 Gray, 411. "The policy of the law, as thus expressed, is strongly opposed to regarding a marriage, entered into in good faith, believed by one or both of the parties to be legal, and followed by cohabitation, as void. A liberal construction of the statute authorizes us to construe it as including a case where the parties go before a magistrate or minister, make a marriage contract in some form in his presence, in the belief that he sanctions or assents to it in his official capacity, and cohabit

as husband and wife . . . . The spirit of the statute would be violated by holding the parties to be fornicators and the children illegitimate." *Meyers* v. *Pope,* 110 Mass. 314, 316. See *Loring* v. *Thorndike,* 5 Allen, 257, 260. A marriage *de facto* being proved, it is presumed to be according to law. "As if a marriage were proved to have taken place in France, for instance, it should seem fit to require the party who denies the marriage to prove its invalidity." *Raynham* v. *Canton,* 3 Pick. 293, 297. "A marriage solemnized by a priest, and under which the parties have cohabited as husband and wife, is *prima facie* a valid marriage everywhere." *Commonwealth* v. *Kenney,* 120 Mass. 387, 388.

It follows that a person attacking a foreign marriage has the burden of proving the foreign law on which he relies. "Where there is no extrinsic evidence either way, the legality of a marriage, like sanity, continuance of life, or regularity of acts of public officers, will be assumed. But where it is attacked and evidence is introduced tending to impeach it, then a question of fact arises to be proved in the light of all the circumstances and the reasonable inferences from them. . . . The law jealously regards the marriage relation and makes reasonable assumptions in its favor . . . . The validity or invalidity of the marriage drawn in question must be established, by the party upon whom the burden of proof is cast, upon all the facts with the reasonable inferences flowing from them." *Turner* v. *Williams,* 202 Mass. 500, 504, 505.

The appellant contends that the parties failed to comply with certain requisites for a valid Jewish marriage in Austria in 1878, among which were (1) A proclamation or publication of the banns in the synagogue on three Sabbaths or holidays; (2) that in the case of a minor whose father is dead, the consent of the court should be obtained; (3) that with men of military age the consent of the military authorities must be obtained; and (4) that the marriage must be performed by a rabbi or religious instructor. The report of the commissioner of labor on marriages and divorce in the United States, 1867 to 1886, including an appendix relating to marriage in certain countries of Europe, was not competent to prove the law of Austria; but it was admitted and we must

assume that this, as well as all other evidence admitted, was considered by the judge and given such weight as he thought it entitled to in reaching his decision. The other books, offered to prove the law and admitted subject to the appellees' exceptions, were published after 1878 and it could be found that they did not purport to be published by authority of the Austrian or Polish governments or that they were commonly used as evidence in their courts. G. L. c. 233, § 70. *Bride* v. *Clark*, 161 Mass. 130. There was evidence tending to prove that the code of Austria had not been published officially since 1811 and that official copies could not be obtained because the first edition exists only in libraries. The probate judge was apparently unable to decide upon the evidence what the law of Austria at the time of the marriage was.

Upon appeal from a decree of the Probate Court, with the testimony reported, the decree must be affirmed unless an examination of the evidence shows that it is plainly wrong. *Townsend* v. *Townsend*, 243 Mass. 401, 403. *Drew* v. *Drew*, 250 Mass. 41, 44. *Needham Trust Co.* v. *Cookson*, 251 Mass. 160. Even if the contention of the appellant that the trial judge disbelieved the evidence offered by him on vital points be true, this in itself presents no sufficient ground for reversing the findings. It was for that court to decide what weight should be given to the evidence relating to the law of Austria and to the testimony of witnesses, both by way of deposition and orally. In weighing the evidence we cannot say that it would be clearly wrong for the judge to give more weight to the inference that the marriage was valid and the children legitimate (which he had a right to draw from the facts admitted and found by him), than to any evidence in the case tending to prove the marriage invalid. The findings, that the law of Austria at the time of the marriage had not been satisfactorily proved, that assuming the volumes admitted contained the law of Austria at the time of the marriage there was a failure to prove the contracting parties had not complied with the requirements of those laws, and that the petitioners and their two sisters are the legitimate children of the deceased testator, are conclusive against the con-

tentions of the appellant, unless the exceptions saved by him show reversible error. All of these exceptions which have been argued have been considered and they show no reversible error. No good purpose would be served by stating them in detail. It follows that Moses H. Steuer had no right to be heard in opposition to the will as a party interested, and no right to appeal from a decree allowing the will as a party aggrieved.

The decrees allowing the petition to strike out the appearance of Moses H. Steuer and denying the petition of Moses H. Steuer that the names of the heirs at law and next of kin mentioned in the petition for the probate of the will be stricken from the record are affirmed, with costs of this appeal; and the appeal from the decree approving and allowing the will is dismissed.

*Ordered accordingly.*