NEEDHAM TRUST COMPANY & another *vs.* AGNES COOKSON
& others.

Norfolk.    December 3, 1924. — January 29, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Will,* Validity.    *Unsound Mind.    Probate Court,* Finding by judge.

Where, at the hearing of a petition for proof of an alleged will of a woman
eighty-seven years of age, there was evidence tending to show that the
alleged will was made when the testatrix was suffering from pneumonia;
that about one and one-half hours before the will was signed she did
not recognize a person with whom she had lived for a long time and
who had married a young woman brought up by her; that she then and
later in the day showed physical symptoms indicating that she was
not herself mentally, and that this condition continued until her death
three days later, a decree disallowing the will was warranted.

PETITION, filed in the Probate Court for the county of
Norfolk on December 11, 1923, for proof of the alleged will
of Agnes Davidson, late of Dover.

In the Probate Court, the petition was heard by *McCoole,* J.
Material evidence is described in the opinion.    By order of
the judge, a decree was entered disapproving and disallowing
the instrument as a last will.    The petitioners appealed.

*W. G. Moseley,* for the petitioners.

*A. J. Berkwitz,* for the respondents.

SANDERSON, J.    This is an appeal from a decree of the
Probate Court disapproving and disallowing the last will
and testament of Agnes Davidson, dated November 18,
1923, upon the ground that the testatrix at the time of mak-
ing the same was not of sound and disposing mind.    The only
question presented is whether upon all the evidence the
judge was warranted in disallowing the will upon the ground
stated in the decree.

At the time the will was signed, the testatrix, about eighty-
seven years of age, was confined to her bed and suffering
from lobar pneumonia of which she died three days later.

The testimony tended to show that on Thursday, November 15, she caught a cold. The doctor was called Saturday afternoon, November 17, 1923, and found her in bed suffering from what seemed to him like a " beginning pneumonia " ; he considered her seriously ill at that time. Saturday night, between seven and eight o'clock, an attorney came to draw a will for Mrs. Davidson, which was prepared and executed, and arrangements were then made to have another will typewritten and put in better form and executed Sunday morning at ten o'clock. The attorney accordingly prepared in typewritten form a will in most respects like that executed Saturday night, but with two clauses added at the end of the ninth paragraph, which were as follows: " On the decease of said Agnes Cookson, one half of the rest, residue and remainder of my estate is to be equally divided among her then living children. On the decease of said Alfreda Childs, one-half of the said rest, residue and remainder of my estate is to be divided among her then living children." The attorney returned to the house of Mrs. Davidson on Sunday morning and met the persons who had been witnesses to the will the night before, and the redrafted will, dated November 18, 1923, was then signed by the testatrix and the three witnesses. This redrafted will is the one offered for probate and disallowed by the court.

Soundness of mind in a testatrix means that " she must have been able to understand, and carry in her mind, in a general way, the nature and situation of her property, and her relations to those persons . . . who would naturally have some claim to her remembrance; to those persons in whom, and those things in which, she has been mostly interested . . . and the nature of the act she was doing. . . . Age is not of itself a disqualification, but it excites vigilance to see if it is accompanied with incapacity. Disease is not itself a disqualification, but all infirmities awaken caution to see if mental capacity is impaired or gone." *Whitney* v. *Twombly*, 136 Mass. 145. *Becker* v. *Becker*, 238 Mass. 362.

Testimony was offered which if believed would have required the court to find that Mrs. Davidson was of sound mind on Sunday morning, November 18, when she signed the

will offered for probate. But other testimony tended to prove that about one hour and a half before this will was signed, Mrs. Davidson did not recognize a person with whom she had lived for a long time and who had married a young lady brought up by her; that her eyes were then sort of glassy looking or stary, different from what the witness had ever seen before; that her mouth was open and she was gasping for breath or panting; that she did not look as if she were able to talk or see; that when the witness asked her if she recognized him she just turned her head over " looking for some place, like she was gone." This witness testified that he was about the place all of Sunday morning and saw no change in her condition. Evidence also was introduced that early in the evening of the day on which the will offered for probate was signed, Mrs. Davidson did not recognize her grandchildren or her daughter-in-law; that she did not from then until her death, on November 21, speak coherently in their presence and that during a part of that time, while they were with her, she was moaning, muttering and delirious. A neurologist, called by the contestants, testified in substance that a person of the age of the testatrix, suffering from lobar pneumonia, would be in a more or less stuporous mental state, cloudy in consciousness, with a distinctly lowered appreciation of her surroundings and a lack of interest therein; that there would be no period of continuous appreciation of her surroundings; that she would not be likely to understand the significance of ordinary affairs Saturday night and would be worse Sunday morning; and that the disease is progressive. Basing his opinion upon the testimony of witnesses, he said she would not be likely to understand the significance of ordinary affairs and could not appreciate any condition such as is involved in making a will, either on Saturday night or Sunday morning, and that her mind was in a stuporous condition thus precluding any concentrated effort to comprehend or appreciate her acts or to understand their significance; that " initiative and memory and comprehension of a situation would be gone "; that in old persons suffering from pneumonia there is a quick decline and a quick lapse into indifference and stupor.

When a case has been heard upon oral testimony, it is not for this court to say what witnesses the trial court should believe; and if the evidence is conflicting, his decision will not be reversed unless it is plainly wrong. *Dickinson* v. *Todd,* 172 Mass. 183. *Colbert* v. *Moore,* 185 Mass. 227. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 547. *Townsend* v. *Townsend,* 243 Mass. 401. *Drew* v. *Drew,* 250 Mass. 41. There was evidence to support the finding that Mrs. Davidson was not of sound and disposing mind on Sunday, November 18, when she signed the will offered for probate, and we cannot say that the decision of the court was plainly wrong.

*Decree affirmed.*